UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

San Francisco Division

| | |
|---|---|
| DENNIS BRUCE ALLUMS,<br><br>Plaintiff,<br><br>v.<br><br>BAY AREA RAPID TRANSIT,<br><br>Defendant. | Case No. 25-cv-08837-LB<br><br>**ORDER GRANTING IN PART AND DENYING IN PART MOTION TO DISMISS**<br><br>Re: ECF No. 10 |

## INTRODUCTION

This pro se civil-rights action arises out of an April 28, 2025, incident at BART's El Cerrito Plaza station, where the plaintiff, a sixty-five-year-old disabled individual, alleges that he was discriminated against based on his disability. A station agent allegedly seized his Clipper card, mocked him after he explained his disability-related memory impairments, and effectively detained him unlawfully and subjected him to retaliation, thereby impeding his access to BART. BART police refused to document what he viewed as theft, falsely claimed there was no video, and offered him a bribe to drop his complaint. The plaintiff asserts disability discrimination, in violation of Title II of the Americans with Disabilities Act (ADA) and § 504 of the Rehabilitation Act, and unlawful detention and bribery amounting to obstruction, in violation of 42 U.S.C. § 1983 and the Fourth and Fourteenth Amendments. He claims that the disability discrimination violates California's Unruh Civil Rights Act, Cal. Civ. Code § 51. The bribery and false imprisonment are separate claims and a

1  violation of California's Bane Act, *id.* § 51.2. And BART's acts constitute elder abuse in violation
2  of California's Elder Abuse and Dependent Adult Civil Protection Act, Cal. Welf. & Inst. Code §
3  15600, negligence, and intentional infliction of emotional distress (IIED).
4  BART moves to dismiss under Rule 12(b)(6), arguing that the complaint does not plead facts
5  sufficient to state claims under Title II of the ADA, § 504 of the Rehabilitation Act, the Unruh
6  Act, or § 1983, and that the state-law claims are barred because the plaintiff does not allege
7  compliance with the Government Claims Act.
8  The court denies the motion as to the ADA and Rehabilitation Act claims (to the extent they
9  are based on denial of reasonable accommodation/disability discrimination in access to BART
10 services) because the plaintiff plausibly alleges that he disclosed a disability-related impairment
11 and was penalized, which supports an inference of discrimination "by reason of" disability. The
12 court dismisses the § 1983 claim because the plaintiff does not plausibly allege unlawful detention
13 or obstruction of access to the courts through the bribe, which are the possible predicates for
14 *Monell* liability, or any basis for *Monell* liability through a failure to train, an unconstitutional
15 policy, or ratification.
16 For the state claims, the plaintiff provided documentation about Government Claims Act
17 compliance after BART filed its reply. BART can revisit the issue of compliance in a renewed
18 motion. Assuming compliance, the Unruh Act and negligence claims survive because they are
19 predicated on the ADA claim. Otherwise, the plaintiff does not plausibly plead bribery, false
20 imprisonment, or a Bane Act claim for the reasons that he does not plausibly plead a § 1983 claim,
21 and he does not plausibly plead IIED or elder financial abuse. The plaintiff may file a supplement
22 to his complaint by January 20, 2026, to address the deficiencies.

**STATEMENT**

25 Plaintiff Dennis Bruce Allums is a sixty-five-year-old resident of El Cerrito, California, who is
26 disabled due to cardiac and neurological impairments. He requires twenty-two daily medications

and ongoing medical supervision, which affect his memory and mobility.[1] Defendant Bay Area Rapid Transit District (BART) is a public-transportation agency that receives federal funding and is subject to the ADA, Rehabilitation Act, and related laws.[2]

On April 28, 2025, the plaintiff entered the El Cerrito Plaza BART Station intending to travel to Berkeley.[3] After tagging in with his Clipper card (a prepaid transit card), he realized he had forgotten personal items in his car, exited the station, retrieved them, and re-entered with the station agent's permission.[4] The agent then seized his Clipper card, forcibly charged him an unspecified fee, refused to return the card, and lectured him about being "too slow" in retrieving his belongings.[5] Despite the plaintiff's explaining his disability-related memory impairments, the agent mocked and demeaned him, insisting he explain his "bad memory," and would not release him until he did.[6] The plaintiff alleges that this constituted unlawful detention, as he was effectively detained by the station agent and unable to proceed without his card, forcing him to travel as a fare evader, all to assist in his being charged as a fare evader at the exit station.[7]

The plaintiff contacted BART Police. Responding officers, including Officer R. Apentsui (Badge #887), refused to document the incident as theft, instead stating that no theft occurred because the plaintiff was "wrong" for exiting and re-entering.[8] They encouraged him to travel without proper documentation, which would result in his arrest as a fare evader since his entry appeared untagged.[9] A second officer, who took over due to the "volatile" situation, allegedly offered the plaintiff a bribe to drop his complaint and not report the agent's "crime/theft."[10] The

---

[1] Compl. – ECF No. 1 at 4 (¶¶ 4, 8). Citations refer to material in the Electronic Case File (ECF); pinpoint citations are to the ECF-generated page numbers at the top of documents.

[2] *Id.* (¶ 5).

[3] *Id.* (¶ 6).

[4] *Id.*

[5] *Id.* at 4 (¶ 7), 5 (¶ 19).

[6] *Id.* at 4 (¶ 8), 5 (¶ 19).

[7] *Id.* at 4–5 (¶¶ 12–13, 19).

[8] *Id.* at 4 (¶ 9).

[9] *Id.* (¶ 12).

[10] *Id.* at 5 (¶ 14).

incident caused the plaintiff severe stress, humiliation, and physical distress, requiring emergency-room treatment at Kaiser Permanente that day.[11]

BART later falsely claimed that no video existed of the incident and then changed its story to assert that an ongoing investigation precluded release.[12] The incident report (CPRA 25-336) mischaracterized the event as a "Fare Dispute" rather than theft or a civil-rights violation, omitted the officers' and the plaintiff's names, and excluded details of the misconduct.[13] BART refused to provide the station agent's or officers' names.[14] The plaintiff alleges that the card seizure and subsequent actions were retaliatory for his complaints about the detention and disability-related questioning.[15] An internal investigation was initiated under Case No. IA2025-040, monitored by BART's Office of the Independent Police Auditor.[16]

The plaintiff filed the lawsuit on October 15, 2025, and seeks compensatory damages of $250,000, punitive damages, injunctive relief (including ADA training and revised procedures), costs, and fees.[17] The court has federal-question subject-matter jurisdiction. 28 U.S.C. § 1331. The parties consented to magistrate-judge jurisdiction.[18] *Id.* § 636(c)(1). The court can decide the motion without oral argument. Civil L.R. 7-1(b).

## ANALYSIS

A complaint must contain a short and plain statement of the claim showing that the pleader is entitled to relief to give the defendant fair notice of the claim and the grounds upon which it rests. Fed. R. Civ. P. 8(a); *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). "A complaint may fail to show a right to relief either by lacking a cognizable legal theory or by lacking sufficient facts alleged under a cognizable legal theory." *Woods v. U.S. Bank N.A.*, 831 F.3d 1159, 1162 (9th Cir.

---

[11] *Id.* at 4 (¶ 10).

[12] *Id.* at 5 (¶¶ 15, 18).

[13] *Id.* (¶ 16); *see also* Incident Rep. – *id.* at 12 (describing the incident as a fare dispute).

[14] *Id.* (¶ 17).

[15] *Id.* (¶ 19).

[16] *Id.* at 4 (¶ 11).

[17] *Id.* at 10–11 (¶¶ 26–28 & Prayer for Relief).

[18] Consents – ECF Nos. 13, 16, 23.

2016). In ruling on a motion to dismiss under Rule 12(b)(6), the court accepts as true the complaint's factual allegations and construes them in the light most favorable to the plaintiff. *Interpipe Contracting, Inc. v. Becerra*, 898 F.3d 879, 886–87 (9th Cir. 2018). A complaint must allege enough facts to state a claim to relief that is plausible on its face. *Twombly*, 550 U.S. at 570. Threadbare recital of the elements of a claim, supported by mere conclusory statements, do not suffice. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

Federal courts construe pro se complaints liberally. A pro se plaintiff need only plead facts showing that he may have some entitlement to relief, not the specific legal theories. *Hearns v. Terhune*, 413 F.3d 1036, 1040–41, 1043 (9th Cir. 2005). A pro se complaint can be dismissed without leave to amend only when the deficiencies cannot be cured by amendment. *Schucker v. Rockwood*, 846 F.2d 1202, 1203–04 (9th Cir. 1988).

The motion to dismiss implicates three issues: (1) whether there are plausible ADA and Rehabilitation Act claims; (2) whether there are plausible claims under 42 U.S.C. § 1983; and (3) whether the state claims must be dismissed because the plaintiff did not comply with the Government Claims Act.[19] The ADA and Rehabilitation Act claims survive, and the § 1983 claim does not. Given the plaintiff's submission of documentation regarding compliance with the Government Claims Act, the court reserves the issue until the next motion to dismiss. Assuming compliance, the Unruh Act and negligence claims survive, and the other claims do not. The dismissal of the claims is with leave to amend.

**1. ADA and Rehabilitation Act Claims**

Title II of the ADA and § 504 of the Rehabilitation Act prohibit discrimination against or exclusion of qualified individuals with disabilities from participation in or receipt of the benefits of a public entity's programs. 42 U.S.C. § 12132; 29 U.S.C. § 794.

Under Title II of the ADA, "no qualified individual with a disability shall, by reason of such disability, be excluded from participation in or be denied the benefits of the services, programs, or

---

[19] Mot. – ECF No. 10.

ORDER – No. 25-cv-08837-LB                5

activities of a public entity, or be subjected to discrimination by any such entity." 42 U.S.C. § 12132. The ADA prohibits public entities from discriminating against the disabled and also prohibits public entities from excluding the disabled from participating in or benefitting from a public program, activity, or service "solely by reason of disability." *Lee v. City of Los Angeles*, 250 F.3d 668, 690–91 (9th Cir. 2001). "Discrimination includes a failure to reasonably accommodate a person's disability." *Sheehan v. City & County of San Francisco*, 743 F.3d 1211, 1231 (9th Cir. 2014), *rev'd in part on other grounds*, 575 U.S. 600 (2015).

The elements of a claim under either Act are (1) the plaintiff is an individual with a disability (2) otherwise qualified to participate or receive the benefit of some public entity's services, programs, or activities (3) was either excluded from participation in or denied the benefits of the public entity's services, programs, or activities or was otherwise discriminated against by the public entity (4) because of his disability. *McGary v. City of Portland*, 386 F.3d 1259, 1265 (9th Cir. 2004) (Title II of the ADA); *Bouslog v. Care Options Mgmt. Plans & Supportive Servs., LLC*, 459 F. Supp. 3d 1281, 1286–87 (N.D. Cal. 2020) (§ 504 of the Rehabilitation Act).

The ADA defines disability as: "(A) a physical or mental impairment that substantially limits one or more major life activities of such individual; (B) a record of such an impairment; or (C) being regarded as having such an impairment." 42 U.S.C. § 12102(1). "Major life activities" include "the operation of a major bodily function, including but not limited to, functions of the immune system, normal cell growth, digestive, bowel, bladder, neurological, brain, respiratory, circulatory, endocrine, and reproductive functions." *Id.* § 12102(2)(B).

Both Acts require that the plaintiff's disability be the cause of the discrimination. *Cohen v. City of Culver City*, 754 F.3d 690, 695 (9th Cir. 2014) (the ADA requires that the "exclusion, denial, or discrimination was by reason of [a] disability"); *Duvall v. County of Kitsap*, 260 F.3d 1124, 1135 (9th Cir. 2001) (same for the Rehabilitation Act).

To recover damages under Title II of the ADA, a plaintiff must prove intentional discrimination. *Duvall*, 260 F.3d at 1138. The plaintiff must show that the defendant acted with "deliberate indifference," which "requires both some form of notice . . . and the opportunity to conform to statutory dictates." *Id.* at 1139 (quoting *City of Canton v. Harris*, 489 U.S. 378, 395 (1989)

(O'Connor, J., concurring)) (cleaned up). The plaintiff must identify "specific reasonable" and "necessary" accommodations that the defendant failed to provide. *Id.* "When the plaintiff has alerted the public entity to his need for accommodation (or where the need for accommodation is obvious, or required by statute or regulation), the public entity is on notice that an accommodation is required, and the plaintiff has satisfied the first element of the deliberate indifference test." *Id.* "[D]eliberate indifference does not occur where a duty to act may simply have been overlooked." *Id.* "Rather, in order to meet the second element of the deliberate indifference test, a failure to act must be a result of conduct that is more than negligent, and involves an element of deliberateness." *Id.*

BART assumes the plaintiff's disability but contends that he did not plausibly plead a disability protected by the ADA or that BART agents acted solely based on the alleged disability. BART frames the issue as one of wrongful detention, contending that in "the arrest or seizure context, there are two types of Title II claims: (1) 'wrongful arrest, where police wrongly arrest someone with a disability because they misperceive the effects of that disability as criminal activity;' and (2) despite the police's proper investigation and arrest of a person with a disability for a crime unrelated to the disability, they 'fail to reasonably accommodate the person's disability . . . causing the person to suffer greater injury or indignity in that process other than other arrestees.'"[20]

The plaintiff plausibly alleges disability based on his cardiac impairment requiring medications that affect his memory and mobility, which explains his slowness in exiting and reentering BART. *See O'Guinn v. Lovelock Corr. Ctr.*, 502 F.3d 1056, 1058 (9th Cir. 2007) (sufficiently pleaded disability by alleging mental illness, including brain damage and organic personality disorder); *cf. Bresaz v. County of Santa Clara*, 136 F. Supp. 3d 1125, 1136 (N.D. Cal. 2015) (delusional belief with manic behavior and agitation, on a single day, is not a disability under the ADA); *Klamut v. Cal. Highway Patrol*, No. 15-cv-02132-MEJ, 2015 WL 9024479, at *1, *7 (N.D. Cal. Dec. 16, 2015) (psychotic episode secondary to two-week sleep deprivation is not a disability; temporary

---

[20] *Id.* at 4 (quoting *Thompson v. Davis*, 295 F.3d 890, 895 (9th Cir. 2002) and citing *Lawman v. City & County of San Francisco*, 159 F. Supp. 3d 1130, 1147 (N.D. Cal. 2016)).

psychological impairments do not fall within the ADA's protections) (collecting cases). He also plausibly alleges denial of equal access to transit: after he was permitted reentry, his transit card was seized because the process took too long, he was mocked for his cognitive/memory issues (despite explaining his disability), and he was forced to travel as a fare evader. In sum, he plausibly alleges disability, deliberate indifference, and exclusion by reason of his disability. *Cohen*, 754 F.3d at 695.

The court understands BART's position: this is fare-policy enforcement unrelated to disability, and the claims thus fail for lack of causation. *Weinreich v. L.A. Cnty. Transp. Auth.*, 114 F.3d 976, 979 (9th Cir. 1997) (no causation when exclusion from transit program was due to financial circumstances, not a disability). The nexus to the disability and employee knowledge are issues of fact. On a motion to dismiss, the court does not resolve fact disputes about what occurred or whether the fare consequences were justified; it asks only whether the plaintiff has pleaded a plausible claim. He has done so for his ADA Title II/§ 504 Rehabilitation Act claims premised on denial of reasonable accommodation and disability discrimination in access to BART services.

## 2. 1983 Claims

The plaintiff alleges that he was effectively detained when the agent withheld his Clipper card. His allegations support the conclusion only that this was denial of a transportation accommodation by reason of his disability, as discussed above. A seizure is akin to custody or a formal arrest, meaning, when a reasonable innocent person would not feel free to go after brief questioning. *United States v. Booth*, 669 F.2d 1231, 1235–36 (9th Cir. 1981). Here, withholding a transit card, while inconvenient, does not rise to that level.

The plaintiff also alleges that an officer tried to bribe the plaintiff to drop his complaint and not report the alleged theft. A plaintiff can allege a constitutional violation through a coverup of true facts that amounts to obstruction of access to the courts. *Delew v. Wagner*, 143 F.3d 1219, 1222 (9th Cir. 1998). The plaintiff does not describe specifically enough what the officer said or offered that was a bribe that might constitute a claim.

The plaintiff also has sued BART, a government actor. Any claim against it under 42 U.S.C. § 1983 must be predicated on *Monell v. Department of Social Services of City of New York*, which

requires that its official policy or custom causes a constitutional tort. 436 U.S. 658, 690 (1978). The city cannot be held vicariously liable for the unconstitutional acts of its employees under the theory of respondeat superior. *Id.* at 691; *Bd. of Cnty. Comm'rs of Bryan Cnty. v. Brown*, 520 U.S. 397, 403 (1997); *Fuller v. City of Oakland*, 47 F.3d 1522, 1534 (9th Cir. 1995).

*Monell* entity liability under § 1983 for a violation of a constitutional right requires a plaintiff to show that (1) he possessed a constitutional right and was deprived of that right, (2) the municipality had a policy, (3) the policy amounts to deliberate indifference to the plaintiff's constitutional right, and (4) the policy was the moving force behind the constitutional violation. *Plumeau v. Sch. Dist. No. 40 Cnty. of Yamhill*, 130 F.3d 432, 438 (9th Cir. 1997). A *Monell* claim can be based on the following theories: (1) a longstanding practice or custom, (2) the failure to adequately train, or (3) a constitutional violation committed or ratified by an official with final policy-making authority. *Clouthier v. County of Contra Costa*, 591 F.3d 1232, 1249–50 (9th Cir. 2010), *overruled on other grounds by*, *Castro v. County of Los Angeles*, 833 F.3d 1060 (9th Cir. 2016).

"In limited circumstances, a local government's decision not to train certain employees about their legal duty to avoid violating citizens' rights may rise to the level of an official government policy for purposes of § 1983." *Connick v. Thompson*, 563 U.S. 51, 61 (2011). "A municipality's culpability for a deprivation of rights is at its most tenuous where a claim turns on a failure to train." *Id.* "To satisfy the statute, a municipality's failure to train its employees in a relevant respect must amount to deliberate indifference to the rights of persons with whom the untrained employees come into contact." *Id.* (cleaned up). Only then can such a shortcoming be properly thought of as a city policy or custom that is actionable under § 1983." *Id.* (cleaned up).

"'[D]eliberate indifference' is a stringent standard of fault, requiring proof that a municipal actor disregarded a known or obvious consequence of his action." *Brown*, 520 U.S. at 410. "Thus, when city policymakers are on actual or constructive notice that a particular omission in their training program causes city employees to violate citizens' constitutional rights, the city may be deemed deliberately indifferent if the policymakers choose to retain that program." *Connick*, 563 U.S. at 61. "The city's policy of inaction in light of notice that its program will cause constitutional violations is the functional equivalent of a decision by the city itself to violate the Constitution." *Id.*

at 61–62 (cleaned up). "A less stringent standard of fault for a failure-to-train claim would result in de facto respondeat superior liability on municipalities." *Id.* at 62 (cleaned up). Thus, "[a] pattern of similar constitutional violations by untrained employees is ordinarily necessary to demonstrate deliberate indifference for purposes of failure to train." *Id.* (cleaned up). "Policymakers' continued adherence to an approach that they know or should know has failed to prevent tortious conduct by employees may establish the conscious disregard for the consequences of their action — the deliberate indifference — necessary to trigger municipal liability." *Id.* (cleaned up). "Without notice that a course of training is deficient in a particular respect, decisionmakers can hardly be said to have deliberately chosen a training program that will cause violations of constitutional rights." *Id.*

Because the plaintiff has not alleged a violation of his constitutional rights (an unlawful detention or an obstruction of his access to the courts), he has not stated a *Monell* claim. Even if he pleads facts to establish an unlawful detention or obstruction, he does not allege a failure to train that amounts to deliberate indifference to his constitutional rights. He does not allege a "persistent and widespread" custom (as opposed to "isolated or sporadic" incidents). *See, e.g.*, *Sweiha v. County of Alameda*, 19-cv-03098-LB, 2019 WL 4848227, at *4–5 (N.D. Cal. Oct. 1, 2019) (plaintiff's allegations of five other incidents do not show a custom or policy where the incidents "have markedly different facts"); *Est. of Mendez v. City of Ceres*, 390 F. Supp. 3d 1189, 1208 (E.D. Cal. 2019) ("[i]f [the] alleged prior instances are sufficiently similar to [plaintiff's circumstances], and the instances constitute a pattern of violations rather than isolated incidents to which policymakers failed to respond or inadequately responded," then the plaintiff has sufficiently stated a *Monell* claim). The dispute centers around possible fare evasion, making it unlikely that a *Monell* claim could proceed on a ratification theory.

The § 1983 claim is dismissed with leave to amend.

### 3. State-Law Claims

The threshold issue is whether the plaintiff complied with the Government Claims Act.

The California Government Claims Act requires a party seeking to recover money damages from a public entity or its employees to present a claim within six months after accrual of the

claim to the entity before filing suit in court. Cal. Gov't Code §§ 911.2(a), 945.4; *see, e.g.*, *Gimbel v. Crescent City Police Dep't*, No. C 07-0113 MJJ, 2007 WL 9735064, at *4–5 (N.D. Cal. June 22, 2007) (claims for false imprisonment, malicious prosecution, and IIED); *Cardenas v. County of Alameda*, No. C 16-05205 WHA, 2017 WL 1650563, at *5 (N.D. Cal. May 2, 2017) (false imprisonment, negligence, and IIED).

BART contends that the plaintiff's complaint did not allege compliance with the Government Claims Act.[21] The plaintiff counters that he complied or substantially complied with the Government Claims Act, asks the court to judicially notice documents that establish his compliance, and contends that he in any event is within the time period to file a late claim.[22] BART replied that the court should dismiss all claims "for the reasons stated in the moving papers and th[e] reply," reiterating the legal standards for Rule 12(b)(6), and concluding that the court should grant its motion for the plaintiff's failure to state plausible claims or respond to BART's arguments.[23]

The filing dates for the opposition, reply, and request for judicial notice show that BART's counsel did not have the plaintiff's documentation of his compliance with the Claims Act when it filed its reply.[24] The court cannot resolve the issue on this record. Instead, the plaintiff's request for judicial notice is deemed a supplement to the existing complaint. BART can raise any objections to compliance with the Government Claims Act in a future motion.

Assuming compliance, the Unruh Act claim survives for the reasons that the ADA claim is plausible, as BART argues only that there is no Unruh Act claim absent an ADA violation.[25] Allegations supporting ADA and Unruh Act claims can support a negligence claim. *Jones v. Nat'l R.R. Passenger Corp.*, No. 15-cv-02726-TSH, 2025 WL 1397162, at *1 (N.D. Cal. May 13, 2025).

The complaint otherwise does not state plausible state claims.

---

[21] *Id.* at 6–7.

[22] Opp'n – ECF No. 20 at 2–4 (documentation can be provided); Req. for J. Notice – ECF No. 22.

[23] Reply – ECF No. 21 at 2–3.

[24] Opp'n – ECF No. 20 (signed December 3, 2025; filed by the Clerk on December 8, 2025); Reply – ECF No. 21 (December 12, 2025); Req. for J. Notice – ECF No. 22 (December 12, 2025).

[25] Mot. – ECF No. 10 at 5.

For the reasons that the plaintiff does not plead a § 1983 claim, he does not plausibly plead false imprisonment/unlawful detention, bribery, obstruction of access to the courts, or liability under the Bane Act, which protects against interference or attempted interference with a person's rights under "the Constitution or laws of the United States" when the interference is carried out by "threats, intimidation, or coercion." Cal. Civ. Code § 52.1(a); *Cornell v. City and County of San Francisco*, 17 Cal. App. 5th 766, 791 (2017) (protects against "all conduct" aimed at interfering with these rights).

The complaint does not plausibly plead IIED, which has the following elements: (1) the defendant's extreme and outrageous conduct with the intent to cause, or reckless disregard of the probability of causing, emotional distress; (2) the plaintiff's suffering severe or extreme emotional distress; and (3) the defendant's outrageous conduct was the actual and proximate causation of plaintiff's emotional distress. *Kelley v. Conco Cos.*, 196 Cal. App. 4th 191, 215 (2011). A defendant's conduct is outrageous when it is "so extreme as to exceed all bounds of that usually tolerated in a civilized community." *Id.* (cleaned up). This is a fare dispute, and while it caused the plaintiff stress, it is not the extreme conduct required to plead an IIED claim.

The complaint, which alleges a wrongful deprivation of a Clipper card, does not plausibly plead elder abuse. Elder financial abuse occurs when a person or entity "[t]akes, secretes, appropriates, obtains, or retains real or personal property of an elder" or assists in doing so "for a wrongful use or with intent to defraud, or both." Cal. Welf. & Inst. Code § 15610.30(a)(1)–(2); *York v. Bank of Am.*, No. 14-cv-02471-RS, 2016 WL 392928, at *4 (N.D. Cal. Feb. 2, 2016). "A person or entity shall be deemed to have taken, secreted, appropriated, obtained, or retained property for a wrongful use if, among other things, the person or entity knew or should have known that this conduct is likely to be harmful to the elder or dependent adult" sixty-five years of age or over. Cal. Welf. & Inst. Code §§ 15610.27, .30(b). "Thus, a plaintiff must aver (1) that the defendant took, secreted, appropriated or retained real or personal property, (2) of an elder, (3) for a wrongful use or with intent to defraud, or both." *York*, 2016 WL 392928, at *4 (citing *Stebley v. Litton Loan Servicing, LLP*, 202 Cal. App. 4th 522, 528 (2012)).

The state claims are dismissed without prejudice.

**CONCLUSION**

The court gives leave to amend to cure the deficiencies identified in this order for the § 1983 claim, the Government Claims Act (for all state claims), and the state claims for bribery, false imprisonment, a Bane Act violation, IIED, and elder abuse. The complaint is deemed amended to incorporate the request for judicial notice and its attachments (filed at ECF No. 22). The plaintiff must file a supplement to the existing complaint (as opposed to a standalone amended complaint). This means that the initial complaint (ECF No. 1), the request for judicial notice (ECF No. 22), and any additional supplement to the complaint collectively will be the operative complaint. The plaintiff need not repeat the allegations in ECF Nos. 1 and 22 and instead must file a supplement with only new allegations. The deadline to file the supplement is January 20, 2026.

This resolves ECF Nos. 10 and 22.

**IT IS SO ORDERED.**

Dated: December 23, 2025

_____
LAUREL BEELER
United States Magistrate Judge